Walker v. Fenner et al.

## WALKER *vs.* FENNER ET AL.

1. To entitle the plaintiffs to recover in action of detinue, they must show that the defendant, either at the time of the demand made, or, if no demand was made, at the time the writ was sued out, had the actual possession, or the controlling power over the property; unless, having the possession anterior to such demand or suit, he has wrongfully, or to elude the plaintiff's action, parted with it, or unless he holds it under a contract of bailment, the terms of which he violates by failing to re-deliver it.

2. If a party who has the possession of personal property *pur autre vie*, hires it out for the usual period of hiring such property, and the life estate determines pending the term, he is guilty of no wrong to the remainder-men who may in such case bring detinue against the person in actual possession, or wait until the hiring expires, and the property is returned to the former possessor.

ERROR to the Circuit Court of Lauderdale.

Tried before the Hon. Thomas A. Walker.

R. W. WALKER, for plaintiff in error:

The question presented is, whether the defendant is liable in detinue, where the property sued for was, at the time the plaintiff's right to the possession accrued, and when the action was brought, in the possession of the defendant's bailee, for hire for an unexpired term.

1. The *gist* of the action is the wrongful *detainer*, and not the original *taking*, and a necessary result of the principle is, that in order to maintain the action, the plaintiff must show an actual possession, or a general controlling power over the chattel by the defendant, at the date of the writ.   4 Dev. &

Batt. 468; Jones v. Green, 4 ib. 354; 10 Iredell, 424; Hall v. White, 3 Carr. & Pay. 136; 1 Saunders, Pl. & Ev. 436; 10 Ala. 960; 2 Steph. N. P. 1309, 1311; see also Gaines v. Harvin, June Term, 1851; 10 Ala. 960.

In this case the defendant was not in actual possession, nor did he have the general controlling power over the negroes at the date of the writ. The defendant's bailee had both, and his disturbance of their possession, or interference with their general controlling power, would have been a trespass, for which the law gives them a clear remedy against him. Their actual possession was not his constructive possession. Constructive possession is the *right* to the *immediate* possession. The defendant could not, for any injury to or conversion of the slaves during the term of hire by a third person, maintain either trespass or trover. The bailee alone could do so. Leaird v. Davis, 17 Ala. 448; 8 Porter, 133; Abercrombie v. Bradford, 16 Ala. 560, 567–8; Railroad Co. v. Kidd, 7 Dana, 245; Clark v. Poozer, 2 McMullen, 434; Andrews v. Shaw, 4 Dev. 70; 11 Ala. 863; 2 Greenl. Ev. §§ 614, 616.

The action of detinue being an action for the recovery of a specific chattel, it seems clear that the defendant must be, when suit is brought, in a condition to relieve himself from the consequences by a delivery of the property. The writ is a *demand* of the property, and this demand must be made on some one who can comply with it. If it is *impossible* for the defendant to deliver the property, the action does not lie, and it is immaterial whether the impossibility results from the anterior destruction of the chattel, or from a contract made by the defendant, which, at the time it was made, was legal and valid. If the defendant cannot *legally* deliver the property, then, in contemplation of law, it is impossible for him to deliver it. An illegality is an impossibility. See Lindsay v. Perry, 1 Ala. 203; Foscue v. Eubanks, 10 Iredell, 424.

2. Possession by the defendant anterior to the date of the writ is sometimes sufficient, but only in two classes of cases:

*First*, where the defendant has been in possession before suit, and has unlawfully, or to elude the plaintiff's action, and in fraud of his right, parted with the possession.

*Second*, where the action is *ex contractu*, and grows out of a contract of *bailment*. In the latter case, possession before suit

is sufficient, because there the defendant has contracted to return or deliver the chattel to the plaintiff, and it is his failure to comply with this contract which is the ground of the action. His parting with possession before suit is a violation of his contract, an *unlawful* dispossession.

These positions are clear on principle and authority; Caldwell v. Morton, Riley's Law Cases, 277; Kershaw v. Boykin, 1 Brevard, 301; Pool v. Adkisson, 1 Dana, 110, 118; Rucker v. Hamilton, 3 ib. 36, 44–5; 5 Carr. & P. 353; Jones v. Dowle, 9 Mees. & W. 19; Nelson v. Iverson, 17 Ala.; 1 American Leading Cases, 115; 3 Comyn's Digest, 364; 2 Steph. N. P. 1312; Browne's Actions at Law, top p. 258.

The defendant in this case exercised a plain legal right in hiring out the slaves. At the time he did so, the life estate had not fallen in. He parted with the possession *lawfully*, therefore, and not evasively, or in fraud of plaintiff's action, or in violation of any contract with the latter. Graham v. Penman, 1 Brevard, 399; 2 Hill, 554; 6 Humph. 55, 57.

3. It is a conclusive answer to the action, that defendant *never had actual or constructive possession of the slaves at a time when the plaintiffs were entitled to the possession.* The plaintiffs claimed as remainder-men after the death of Robert Fenner, who died in September, 1847. The suit was brought in October, 1847, and the defendant (who held during Robert Fenner's life) had, on 1st January, 1847, hired out the slaves for twelve months. It is clear that if a prior possession will suffice at all, it must be a possession at a time when the plaintiff is entitled to the property; because, a possession when the plaintiff is not entitled to the property, is not the possession of the plaintiff's property. Graham v. Penman, 1 Brevard, 399; Rucker v. Hamilton, 3 Dana, 36, 44–5; Andrews v. Shaw, 4 Devereux, 70; 4 Dev. & Batt. 323; Cole v. Robinson, 1 Iredell, 541.

4. Possession by defendant *after* suit, and at the *trial*, is immaterial. The pleadings relate to the date of the writ. The plaintiff must have his right then, and the defendant be then liable. 5 St. & P. 123; 8 Porter, 564, 575; 13 Ala. 208, 218; 1 Stew. 536; 10 Iredell, 424.

ORMOND & NICOLSON, *contra:*

The only question raised upon the record is, whether the possession of one to whom negroes are hired, is such as inures to the bailor, so that the action of detinue may be maintained against the bailor, or one who hired out the negroes, before the expiration of the term of hiring.

In the case of Magee v. Toland, 8 Port. 36, the facts were, that Toland had married Miss Carnathan, a minor, that at the time of the marriage her guardian had hired out the negro sued for. She died before the term of hiring had elapsed, and the only question was, whether there was such a possession in Toland, as that his marital rights could attach. The court had no difficulty in arriving at the conclusion that the possession of the bailee was the possession of the bailor; that was almost assumed. The only question of any difficulty was, whether the possession of the guardian was the possession of the ward. The case determines that it was, and that detinue was maintainable by the husband. True, the action was brought against the bailee, but the court expressly says, that under the hiring, *his* possession was the possession of the bailor, and if that be true, the action could well be maintained against either, for a constructive possession is sufficient for this action. Toland's marital rights attached, in the case cited, under the principle that the possession of the bailee was the possession of the bailor; but the law says, that the personal property of the wife must be reduced to possession, and the court is reduced to the necessity of saying, that a higher *nature of possession*, a *more actual* possession is demanded for the action of detinue than for the marital rights of a husband, or else disavow the case of Magee v. Toland.

Hiring is a species of bailment. Story on Bail't, 262, § 396. The case of Ricks v. Dillahunty, 8 Port. 133, does not decide that it is not. As to the contract between *the parties*, a hiring may be, and doubtless is, governed by the principles regulating sales; but that it is a *purchase*, in the broad, legal sense of the word, is not true. If it is, why did this court say, in Abney v. Kingsland & Co. 10 Ala. 365, bottom of page, that though as a general proposition, it was true a limited estate in personal property may be sold, yet that it did not follow that the interest of a hirer of a negro could be sold? If the doctrine contended for on the other side be true, would this

have ever been made a question. There would have been no doubt that a negro thus situated could be sold under execution.

The case of Ricks v. Dillahunty was never intended to disturb the law of bailment, as it has stood for more than one hundred years. The question there was, whether the hire should be abated in consequence of the death of the negro before the expiration of the year, and in that respect, the contract between the parties is governed by the law regulating sales. That was all that it was necessary to decide, and is undoubtedly sound law. The broad language used in that case led, no doubt, to the act of 1848–49, prohibiting sales of negroes hired out, which shows that it is the policy of the State to regard *hiring* as a bailment.

That the h:ring of a negro is a bailment, see Story on Bailment, 262; Hawkins v. Pythian, 8 Monroe, 515; Mellen v. Ensley, 8 Humph. 428; 10 Ala. 365, last par. of Abney v. Kingsland.

2. It is argued, however, that Walker, being the purchaser of a life estate, had a right to hire out the negro for a year. It is true he had the legal right to make the contract, but that contract must be in subordination to the duty which he himself was bound to perform. What was that? It was, to turn over the negroes to the remainder-men as soon as the life estate fell in. And can he claim exemption from the performance of this duty, by pleading his own act in excuse? He has brought about this state of things, and now sets up the technical law of hiring, as he interprets it, as an excuse for himself. He knew what his duty to the remainder-men was, and he had no right to clog that duty with any such contract as he has made. " A tenant *for life of a personal estate, and his privies, are trustees* for those in remainder," 3 Bac. Ab. 471; 2 McCord, 149. Walker being trustee for those in remainder, his contract necessarily terminated with the life estate, and he had no right to place himself in such a position as not to be able to turn over the estate to those in remainder. If his bailee would not give up the negroes, it is surely not our fault, but Walker's; he should have made it a part of the contract of hiring.

Was not the possession of Walker, through his bailee, tor-

tious from the moment of Fenner's death? it being his duty to turn the negroes over to defendant in error when, and as soon as the life estate fell in.

Detinue may be maintained against one who had possession of the property, although he may have parted with it at the time suit was brought. Bac. Ab. Detinue, 135; Burnley v. Lambert, 1 Wash. 309; Pool v. Adkisson, 1 Dana, 44; Mees. & Welsby, 19; 8 Howard, Miss. 394.

CHILTON, J.—The plaintiff in error, having purchased the life estate of Robert Fenner, hired the slaves, for the recovery of which this action is brought, to Messrs. Bliss and Kirkman, for the term of one year. Pending this term, Robert Fenner died, and the right of the defendants in error as remainder-men to the possession of the slaves accrued. Having commenced their action before the expiration of the term, and while the slaves were in the actual possession of Bliss and Kirkman, the question was raised in the court below, in the prayer for instructions to the jury, whether, under the circumstances, detinue will lie.

On the part of the plaintiff in error, it is insisted that the gist of this action is the wrongful *detainer*, and not the original *taking*, and that as a result from this principle, in order to maintain the action, the plaintiff must show an actual possession, or such a general controlling power over the chattel by the defendant at the date of the writ, as would enable him to surrender it in the event of a recovery. On the other hand, it is argued that the possession of the bailee is the possession of the bailor, or the person who lets to hire, and that if the latter disposes of the actual possession for a period beyond the termination of his estate, making no provision in his contract for a return of the property upon the happening of the event which is to terminate his interest, this is his fault, which should not avail him as a defence. I am free to confess that there is force in this argument, and that it derives additional strength when applied to this case, from the fact that, according to the contract of hiring which the defendant below set up, the actual possession of the slaves would be returned to him some eight months anterior to the trial term of the suit.

I have carefully looked into the authorities bearing upon the point, to a few only of which I will refer, and think it may be safely asserted as the correct rule deducible from them, that to entitle the plaintiffs to recover, they must show that the defendant, either at the time of demand made, or in the event there was no demand, at the time the writ was sued out, had the actual possession, or the controlling power over the property, unless, having the possession anterior to such demand or suit, he has wrongfully, or to elude the plaintiffs' action, parted with it, or unless he holds it under a contract of bailment, the terms of which he violates by failing to re-deliver it. Perhaps an exception to the rule obtains in cases where the defendant represents that he has the goods, and thereby induces the owner to bring the action against him. 3 Bar. & Cres. 136; 1 Chitty Pl. 125, mar. The author just cited says: "Detinue does not lie against a person who never had the possession of the goods; as against an executor on a bailment to the testator, unless the goods came to the possession of the executor; nor against a bailee, if before demand he lose them by accident; though, if he wrongfully deliver the goods to another, he will continue liable."

The books are agreed that the detention is the *gist* of this action. By "detention" is meant that the defendant withholds the goods, and prevents the plaintiff from having possession of them. Did the defendant below detain these slaves when the suit was commenced against him, there being no previous demand? It is clear that he had neither the possession, nor the immediate right of possession. The persons hiring the property had, as against him, for the term during which the hiring continued, both the possession and the right of possession; consequently, he could not be said to have detained them from the plaintiff, as he neither had them nor the control of them so as to make the delivery. See Clemts v. Flight, 16 Excheq. Rep. 42; Charles v. Elliott, 4 Dev. & Bat. 468, which is a stronger case than the one before us; for in that case defendant, who claimed the slave as a trustee under a void deed, put him in the hands of his co-trustee to avoid the plaintiffs taking forcible possession of him. The co-trustee had sent him beyond the State, but without the knowledge or consent of the defendant. The

court, held that it was generally incumbent on the plaintiff to show either an actual possession in the defendant, or a controlling power over the chattel at the date of the writ, citing Anderson v. Passman, 7 C. & P. 193; Leigh's N. P. 782, and under the facts of th t case, disallowed the action. In the case of Jones, administrator, &c., v. Greene, same book, Judge Ruffin affirms substantially the same doctrine.

In Kershaw v. Boykin, 1 Brev. 301, the court say : "It is true the defendant must have possession of the thing sued for, at the time of ·bringing the suit, 4 Rep. 83; and if he had been *lawfully* dispossessed before, the action will not lie; citing 1 Wash. 311. But it is otherwise, although the thing be not in the possession of the defendant at the time, if he has wilfully or fraudulently parted with the possession to avoid the suit;" citing 3 Com. Digest, 358; Haw. 12.

The doctrine that where there has been no wrongful or elusive disposition of the property, it must be shown that the defendant was at the time of demand, or of the commencement of the suit, either actually or potentially in possession of the property, was asserted by Tindal, C. J., in Garth v. Howard, 5 C. & P. 346; see also Ford v. Caldwell, Riley's L. Rep. 277, and Burton v. Brasher, 3 A. K. Marsh. 278.

These authorities may suffice to show that this action could not properly have been maintained, unless it were shown that the defendant had parted with the property wrongfully or fraudulently to affect the plaintiff's right to the action; and upon this point, there was no proof whatever to show that the disposition of them, at the time it was made, was in any wise improper. But on the contrary, holding for the life of another, and his estate being uncertain as to the time of its termination, Walker might well have hired the slaves for one year, without any inference of injury to the rights of the remaindermen. According to the common law, the representatives, under-tenants, or lessees of the tenant for life are entitled to the emblements or profits of the crop, if the estate terminate before harvest, and this results from the nature of his estate, which is contingent and uncertain in dura.ion, and this uncertainty shall not prejudice him. Co. Lit. 42; 3 Bla. Co n. 35. We think, by analogy to such case, the party in possession of personal property *pur autre vie*, and who hires

it out for the usual period of hiring such property, is guilty of no wrong against the remainder-men, should the life estate terminate pending the term. The plaintiff can proceed in detinue against the person in actual possession, or he may wait until the hiring expires and the property is returned to the person who let it to hire.

As there was no proof in this case raising any presumption unfavorable to the defendant in respect to the manner of his dispossession at the time the action was brought, and as he had *bona fide* parted with the possession of, and the dominion and control over the slaves, and was not therefore potentially possessed, we are of opinion that the court erred in refusing the instructions prayed for. Its judgment is therefore reversed, and the cause remanded.